**Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000500
31-DEC-2014
07:54 AM**

NO. CAAP-12-0000500

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

TARVAL G. WEBSTER, Petitioner-Appellant, v.
STATE OF HAWAIʻI, Respondent-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(S.P.P. NO. 11-1-0056; CR. NOS. 98-0613 and 99-0358)

SUMMARY DISPOSITION ORDER
(By: Nakamura, Chief Judge, Leonard and Reifurth, JJ.)

Petitioner-Appellant Tarval G. Webster (**Webster**)
appeals from the Order Denying Motion for Post-Conviction Relief,
filed on May 2, 2012 in the Circuit Court of the First Circuit
(**Circuit Court**).[1]

In Cr. No. 98-0613, Webster was found guilty of a
lesser included offense of Attempted Assault in the First Degree,
in violation of Hawaii Revised Statutes (**HRS**) § 707-710 (1993)
(**Count I**), Carrying, Using or Threatening to Use a Firearm in the
Commission of a Separate Felony, in violation of HRS § 134-6(a)
and (e) (Supp. 1998) (**Count II**), Place to Keep Pistol or
Revolver, in violation of HRS § 134-6(c) and (e) (Supp. 1998)
(**Count III**), and three counts of Reckless Endangering in the
First Degree, in violation of HRS § 707-713 and 706-660.1(3)
(1993) (**Counts IV, V, and VI**). Webster was sentenced to 10 years

---

[1]     The Honorable Michael D. Wilson presided.

of incarceration for Count I with a mandatory minimum of 10 years, 20 years of incarceration for Count II, 10 years of incarceration for Count III, and 5 years of incarceration for each of Counts IV, V, and VI with a mandatory minimum of 5 years for each count. The sentences in Cr. No. 98-0613 were ordered to be served concurrently with each other but consecutively to Webster's sentence in Cr. No. 99-0358.

In State v. Webster, 94 Hawaiʻi 241, 249, 11 P.3d 466, 474 (2000), the supreme court vacated Webster's conviction on Count II in Cr. No. 98-0613 and, on February 5, 2001, a First Amended Judgment was entered, which re-sentenced Webster to the same terms as above on Counts I, III, IV, V, and VI.

In Cr. No. 99-0358, on September 22, 1999, pursuant to a plea agreement, Webster pled guilty to the lesser included charge of Manslaughter and Place to Keep Pistol or Revolver. Webster was sentenced to 20 years incarceration for Manslaughter with a 5 year minimum and 10 years incarceration for Place to Keep Pistol or Revolver, both sentences to be served concurrently to each other but consecutively to Cr. No. 98-0613.

A Notice and Order Fixing Minimum Term(s) of Imprisonment dated June 29, 2000 set Webster's minimum sentence for all counts in Cr. Nos. 98-0613 and 99-0358 at the maximum indeterminate term for each count; thus, Webster's minimum sentences were also his maximum sentences.

On June 23, 2010, Webster received a new minimum sentencing hearing pursuant to Coulter v. State, 116 Hawaiʻi 181, 172 P.3d 493 (2007), which requires that the Hawaii Paroling Authority (HPA) state the level of punishment and the significant criteria upon which the level of punishment is based. A Notice and Order of Fixing Minimum Term(s) of Imprisonment dated May 27, 2011 set Webster's minimum sentence for each count again at the maximum terms, except for Count III in Cr. No. 98-0613, which was set at 8 years instead of the maximum term of 10 years. The notice identified Webster's Level of Punishment as Level III and

the significant factors identified in determining the level of punishment were "(1) Nature of Offense; (2) Degree of Injury/Loss to Person."

On October 11, 2011, Webster filed a Petition to Vacate, Set Aside, or Correct Illegal Sentence Through a Writ of Habeas Corpus Pursuant to [Hawai'i Rules of Penal Procedure] Rule 40 (**Petition**). On May 2, 2012, the Circuit Court issued an Order Denying Motion for Post-Conviction Relief.

On appeal, Webster argues that the Circuit Court erred in denying him relief because the HPA deviated from its Guidelines when the order fixing his minimum sentence only noted Nature of Offense and Degree of Injury/Loss to Person as the significant criteria, without providing additional written explanation as to what facts or evidence were used to satisfy the callous and/or cruel disregard for the safety and welfare of others for the Nature of Offense definition. Webster claims that, since Manslaughter is defined as acting recklessly, HPA deviated when it found that his offense exhibited a callous and/or cruel disregard for the safety and welfare of others. Webster argues that the HPA acted in an arbitrary and capricious manner when "all of the minimum terms were originally set at their maximum sentence," and the revised order only reduced one minimum from 10 years to 8 years. In addition, Webster claims that he received a mandatory minimum of 10 years on that count, thus, the HPA could not impose a lesser minimum for that conviction. Webster asserts that the "HPA's initial starting point should have been Level I or II under the [Level of Punishment] matrix for the Nature and Degree criteria because this is the baseline for 'comparable' injury or loss for similarly situated victims[.]" Finally, Webster argues that he was provided ineffective assistance of counsel, primarily because he was not informed by counsel of the minimum sentencing deficiencies and counsel failed to protect his due process right by "not inserting the correct [Level of Punishment] during the minimum term hearing and never asked what evidence was to be used or what [Level of Punishment] that the HPA was considering."

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Webster's points of error as follows:

The Circuit Court did not err by denying Webster's Petition because the claims were patently frivolous and without a trace of support in the record.

In the Notice and Order of Fixing Minimum Term(s) of Imprisonment dated May 27, 2011, HPA cited two significant factors, "Nature of Offense" and "Degree of Injury/Loss to Person or Property." No additional explanation was provided.

In the HPA Guidelines, "Nature of Offense" has three subsections, of which only subsection (a) could apply to Webster's convictions. Thus, we presume that HPA determined that the "offense was against a person(s) and the offender displayed a callous and/or cruel disregard for the safety and welfare of others[.]" Fagaragan v. State, 132 Hawai'i 224, 239, 320 P.3d 889, 904 (2014) (court presumed applicable subsection based on nature of offenses).

Webster's "Presentence Diagnosis and Report Dated 11/4/99" (**PSI**) described the details of the offenses Webster was convicted of in Cr. Nos. 98-0613 and 99-0358. In Cr. No. 98-0613, on July 1, 1997, Webster and two other males were in a fight with Kenneth Morris (**Morris**), the complaining witness of the Attempted Assault in the First Degree conviction. Morris and Roman Villanueva (**Villanueva**) had allegedly stolen drugs from Webster. When Morris saw Webster with a gun, he ran into Villanueva's apartment. Webster fired three shots into the apartment, one bullet grazed Villanueva in the head. Villanueva, Villanueva's girlfriend, and her baby were in the apartment at the time. Webster's three convictions for Reckless Endangering in the First Degree were for shooting into the apartment while it was occupied. Webster demonstrated callous and/or cruel disregard for the safety and welfare of others when he fired

three bullets in an attempt to shoot Morris without regard to the presence of others within the apartment and a bullet grazed Villanueva in the head.

The Degree of Injury/Loss to Person or Property to Villanueva was greater than that suffered by similarly situated victims of Reckless Endangering in the First Degree. Reckless Endangering does not require actual injury to occur. HRS § 707-713. However, Villanueva was injured when Webster shot into the apartment.

In Cr. No. 99-0358, the decedent, Chih Kai Pan (**Pan**), was found on the side of Tantalus Drive with dried blood running downhill from his head. Pan died of gunshot wounds to the head with injury to the brain. An interviewee stated that Webster admitted to him that he killed Pan by shooting him in the head execution style, and that he robbed the victim of nine hundred. A second interviewee reported that Webster mentioned that he had driven the victim up to Tantalus before shooting him, and that "shooting the victim was better than having sex." Webster said that after the victim was shot "his eyes got swollen, and he stiffened and fell . . . [and] that blood was coming out of the victim like a faucet." A third interviewee stated that Webster told him that after the victim fell, he began convulsing and that Webster "then unloaded his pistol, shooting the guy a total of six times." He also stated Webster shot the victim because the victim had nine hundred dollars. Although Webster's conviction was for Manslaughter, in conjunction with his guilty plea, the statements attributed to Webster by various people reveal that Webster shot Pan in the head several times, in what was described as execution style, because Pan had money. Those statements evidenced a callous and/or cruel disregard for the safety and welfare of others. In addition, the circumstances of the victim's death, including being driven to the remote location before his execution, Webster's taking pleasure in the killing, the robbery of the victim, and the extent of the victim's suffering support a degree of loss greater than other

manslaughter victims. Therefore, the HPA did not act arbitrarily or capriciously when it determined that Webster's level of punishment was Level III based upon the "Nature of the Offense" and the "Degree of Injury/Loss to Person or Property" criteria.

The HPA did not deviate from the suggested minimum term lengths. The HPA Guidelines stated that at Level III, the minimum sentence may be set at 3-5 years when the maximum term is 5 years, it may be set at 5-10 years when the maximum term is 10 years, and it may be set at 10-20 years when the maximum term is 20 years. The HPA did not set Webster's minimum sentences below or above the specified ranges in the HPA Guidelines for his various convictions.

The HPA may set a minimum sentence equal to the maximum sentence. <u>Williamson v. Hawai'i Paroling Auth.</u>, 97 Hawai'i 183, 193-96, 35 P.3d 210, 220-23 (2001). Webster's minimum sentence of 8 years for Count III in Cr. No. 98-0613 did not have a mandatory minimum of 10 years set by the Circuit Court.

The HPA Guidelines do not specify any initial starting point such as Level I or II. The HPA Guidelines state, "[i]n reaching a decision on a minimum term, the criteria to be taken into consideration are discussed in Part IV." All relevant criteria are evaluated and a level of punishment is determined; the HPA's decision is not based upon an initial starting point which allows for the level to increase or decrease based upon the criteria.

Webster argues that his due process and equal protection rights were violated when the Circuit Court denied the Petition. Webster cites <u>Coulter</u> but provides no specific argument as to how his due process right or right to equal protection were violated other than his prior arguments. As discussed above, the HPA did not violate the HPA Guidelines, did not deviate from the guidelines, and provided a sufficient written explanation of the criteria used to determine that Level

III was appropriate for Webster.[2]  Thus, Webster's claim that his due process right and right to equal protection were violated is without merit.

Webster's counsel was not ineffective in 2000 because <u>Coulter</u> had not yet been decided at the time the HPA issued its Notice and Order Fixing Minimum Term(s) of Imprisonment dated June 29, 2000.  Any deficiency with the June 29, 2000 notice would have been cured by providing Webster another minimum sentencing hearing, pursuant to <u>Coulter</u>.  As explained above, the Notice and Order of Fixing Minimum Term(s) of Imprisonment, dated May 27, 2011 is not deficient or erroneous.

It is not clear whether Webster's claim that counsel failed to present mitigating factors is related to his first minimum sentencing hearing in 2000 or the second one held on June 23, 2010.  In any case, a subsequent minimum sentencing hearing in 2010 should have negated any missed opportunity by counsel to present mitigating factors in 2000.  The HPA may consider mitigating factors listed in Hawaii Administrative Rules § 23-700-24.  Webster claims that the transcript of the minimum sentencing hearing demonstrates counsel's failure to present mitigating and "additional" factors.  However,

> [t]he duty is incumbent on the petitioner alleging error to make the same manifest by bringing the record before the appellate court so as to disclose either that the things complained of were not done in the manner provided by law or were done in a manner prejudicial to the rights of the petitioner.

<u>State v. Hoang</u>, 93 Hawaiʻi 333, 336, 3 P.3d 499, 502 (2000).  There is no transcript of either minimum sentencing hearing in the record on appeal.  Without the transcript, this court is unable to conclude that counsel was ineffective.  <u>Id.</u>

---

[2]    In light of the record, the HPA's explanation was sufficient to permit meaningful review of the HPA's decision.  <u>See</u> <u>Nichols v. State</u>, No. CAAP-12-0000043, 2014 WL 7334909 (Hawaiʻi App. Dec. 24, 2014)

For these reasons, the Circuit Court's May 2, 2012 Order Denying Motion for Post-Conviction Relief is affirmed.

DATED: Honolulu, Hawaiʻi, December 31, 2014.

On the briefs:

Tarval G. Webster
Petitioner-Appellant Pro Se

Lisa M. Itomura
Diane K. Taira
Deputy Attorneys General
State of Hawaii
for Respondent-Appellee

Chief Judge

Associate Judge

Associate Judge